UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFERY N. CARR, SR., *on behalf of himself and all others similarly situated,*<br><br>Plaintiff,<br><br>v.<br><br>REGULATORY DATACORP, INC., and<br>BUREAU VAN DIJK ELECTRONIC PUBLISHING, INC.,<br><br>Defendants. | C.A. NO.<br><br>JURY TRIAL DEMANDED |

**CLASS ACTION COMPLAINT**

### I.   PRELIMINARY STATEMENT

1. This is a consumer class action based upon the widespread violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 – 1681x ("FCRA") by Defendants Regulatory Datacorp, Inc. and Bureau van Dijk Electronic Publishing, Inc.

2. Defendants violate the important protections in the FCRA by improperly associating innocent consumers with the adverse public records, including criminal records and/or government sanctions lists of known terrorists, narcotics traffickers, money launderers, arms dealers, and other individuals prohibited from doing business in the United States.

3. Defendants compound the harm of this inaccurate and defamatory reporting by hiding it from consumers – when consumers request information from Defendants, they uniformly fail to respond with all information in consumers' files, in violation of the FCRA's disclosure requirements which are foundational to ensuring that consumers can correct inaccuracies.

1

4. Defendants' conduct deprives consumers of their rights under federal law and results in widespread harm.

## II.   JURISDICTION & VENUE

5. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. §§ 1331.

6. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and both defendants maintain substantial and systematic contacts within this District.

## III.   PARTIES

7. Plaintiff Jeffery N. Carr, Sr. is an adult individual who resides in Stockbridge, Georgia.

8. Defendant Regulatory Datacorp, Inc. ("RDC") is a consumer reporting agency and Delaware corporation that maintains its principal place of business in this District at 211 South Gulf Road, Suite 125, King of Prussia, PA 19406.

9. Defendant Bureau van Dijk Electronic Publishing, Inc. ("BVD" or "Bureau van Dijk") is a consumer reporting agency and New York corporation that maintains its principal place of business in the United States at 120 N. LaSalle Street, Suite 1700, Chicago, Illinois, 60602.

10. When accessing Defendants' website, a pop-up screen appears which states: "We're pleased to announce that as a result of the acquisition last year, RDC is now part of Bureau van Dijk – and is known as Bureau van Dijk." https://www.bvdinfo.com/en-gb/about-us?ref=rdc (last accessed: May 11, 2022).

11. According to Defendants' website: "RDC became part of Bureau van Dijk in February 2021. We're now united under the Bureau van Dijk brand." https://www.bvdinfo.com/en-gb/about-us?ref=rdc (last accessed: May 11, 2022).

12. According to Defendants' website: "RDC is now integrated into Bureau van Dijk[.]" https://www.bvdinfo.com/en-gb/about-us?ref=rdc (last accessed: May 11, 2022).

### IV. FACTUAL ALLEGATIONS

**A. RDC and Bureau van Dijk Are Consumer Reporting Agencies.**

13. According to Defendants' website:

> Established in 2002, RDC was formed by a consortium of 20 of the world's leading financial institutions following the September 11 attacks and the enactment of the USA PATRIOT Act.
>
> RDC's roots are in aggregating and leveraging public information to help organisations identify and manage risks relating to money laundering, fraud, corruption, terrorism, organised crime, and other threats.
>
> RDC has continued to collect and categorise relevant risk information in its Grid database and evolving its screening Review capabilities for compliance with global regulations and know-your-customer (KYC) requirements.
>
> Now RDC is united with Bureau van Dijk and together we offer powerful combined solutions:
>
> - fast validation and screening of entities and people
> - the best entity data, including corporate structures and beneficial ownership
> - curated adverse media, and fast, precise screening, that's easy to configure
>
> RDC is now integrated into Bureau van Dijk but it's legacy and mission remain as relevant and important in this new environment as they were in 2002: together we're united in preventing criminal infiltration of the world's financial systems.

https://www.bvdinfo.com/en-gb/about-us?ref=rdc (last accessed: May 11, 2022).

14. Defendants do, in fact, regularly engage in aggregating and leveraging information to help organizations, specifically financial institutions, identify and manage risks, specifically those risks associated with lending money to consumers whose information Defendants aggregate and leverage.

15. According to Defendants' website, their products specifically include products for analyzing "credit risk" and providing "detailed reports" about individuals.

https://www.bvdinfo.com/en-gb/about-us?ref=rdc (last accessed: May 11, 2022); https://www.bvdinfo.com/en-gb/solutions-for-your-role/compliance-and-financial-crime (last accessed: May 11, 2022).

16.     Defendants regularly provide Capital One Bank (USA), N.A. and/or its affiliated companies with criminal background checks and consumer reports on individuals for the purpose of allowing Capital One Bank, (USA), N.A. to use such data to make decisions on whether to extend, or continue to extend, credit to such individuals. Defendants' criminal records and consumer reports emanate from RDC's office located in King of Prussia, Pennsylvania, and when the information on such records and reports is false, the publication of any defamatory statements about a consumer occurs in the Eastern District of Pennsylvania.

17.     Based upon the statements on Defendants' website, Defendants similarly provide such information to other financial institutions for similar purposes.

18.     Specifically, Defendants seek to screen account holders or prospective account holders for such financial institutions to assist the financial institutions in making credit decisions not to lend money to those engaged in "money laundering, fraud, corruption, terrorism, organised crime, and other threats."

19.     In addition to "credit risk," financial institutions may face penalties under the USA PATRIOT ACT and related regulations if they extend credit to an individual who is prohibited from engaging in the U.S. financial system. *See* 31 C.F.R. § 501 App. A, II (setting forth civil and criminal penalties for extending credit to an individual on the U.S. Department of Treasury's list of Specially Designated Nationals ("SDNs"), including terrorists, drug traffickers, and money launderers." *See also* U.S. DEP'T OF THE TREASURY, *OFAC FAQs: General Questions*,

https://www.treasury.gov/resource-center/faqs/Sanctions/Pages/faq_general.aspx (last visited April 6, 2022).

B.  **Defendants' "Credit Risk" Products Are Regulated by Federal Law**

20. The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010).

21. The FCRA covers the transmission of information that bears on the legality of extending credit to the consumer, including the sale of information through products intended for USA PATRIOT ACT compliance. *Cortez*, 617 F.3d at 707-08 (holding that the sale of government watch list information is covered by the FCRA because "[i]t is difficult to imagine an inquiry more central to a consumer's "eligibility" for credit than whether federal law prohibits extending credit to that consumer in the first instance. The applicability of the FCRA is not negated merely because the creditor/dealership could have used the OFAC Screen to comply with the USA PATRIOT Act, as well as deciding whether it was legal to extend credit to the consumer.").

22. The FCRA requires that CRAs "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

23. The maximum possible accuracy standard "requires more than merely allowing for the *possibility* of accuracy," meaning that CRAs do meet that standard by suggesting that certain consumers are "possible" matches for individuals. *Ramirez v. Trans Union, LLC*, No.12-cv-00632-JSC, 2017 WL 1133161, at *5 (N.D. Cal. Mar. 27, 2017) (quoting *Cortez*, 617 F.3d at 709) (emphasis added).

24. In 2010, the U.S. Court of Appeals for the Third Circuit found in *Cortez* that a CRA acted "reprehensibly" and was in willful violation of FCRA section 1681e(b) by using only first and last name to associate consumers with criminals prohibited from conducting financial transactions in the United States. 617 F.3d at 707-08, 723.

25. Later, a court in the Northern District of California certified the FCRA section 1681e(b) claims of a class of 8,192 individuals whose information had been inaccurately associated with criminals on the same government watch list at issue in *Cortez* by a CRA. *Ramirez v. Trans Union, LLC*, 301 F.R.D. 408, 413 (N.D. Cal. 2014). A jury found that the CRA's matching procedures willfully violated the FCRA. *Ramirez v. Trans Union, LLC*, No. 3:12-cv-632-JSC, 2017 WL 5153280, at *2-3 (N.D. Cal. Nov. 7, 2017) (upholding jury's verdict).

26. Moreover, CRAs may not shift their duty to assure accuracy onto the users of the information that they sell. *Ramirez*, 2017 WL 1133161, at *4 (*citing* Cortez, 617 F.3d at 708).

**C.     Defendants' Procedures for Attribution and Sale of Adverse Public Records**

22. Defendants are consumer reporting agencies specializing in the sale of consumer reports to financial institutions for the purpose of assisting financial institutions in evaluating credit risks and making decisions as to whether to lend money to consumers.

23. Defendants operate a unified screening business, where the same policies and procedures apply to both, and employees have duties and responsibilities that span both.

24. Defendants are regulated by the FCRA.

25. As part of its screening business, Defendants offer a product which purports to search databases of records of criminal proceedings and other public records bearing on individuals' eligibility for credit, and include the results of such searches on the consumer reports Defendant compiles and sells.

26. Defendants' practices for matching information obtained to individuals on the consumer reports it sells are uniform and not unique to each consumer or transaction.

27. In preparing reports, Defendants fail to follow reasonable procedures to assure the maximum possible accuracy of the information it sells about consumers, regularly making inaccurate associations between innocent people and criminals as well as other individuals who are ineligible for credit in the United States.

28. Defendants rely upon wholly inadequate matching procedures to associate individuals who are the subject of its screening reports, regularly placing information on consumer reports using only a name.

29. Defendants intentionally employ procedures that maximize the likelihood that its searches will return a result, which compromises accuracy.

30. Defendants' reporting of adverse public record information is not accidental, but instead a result of deliberately designed policies and procedures.

31. At all relevant times, Defendants' conduct, as well as that of its agents, servants, and/or employees who were acting within the course and scope of their agency or employment and under the direct supervision and control of Defendants, was intentional, willful, reckless, and in grossly negligent disregard for the rights of consumers, including Plaintiff.

D. **Defendants Do Not Disclose to Consumers the Adverse Public Records It Maintains and Sells About Them**

32. In addition to disregarding its duty under the FCRA to assure the accuracy of the reports it prepares and sells about consumers, Defendants furthermore refuse to respond to consumers' requests for information as required by the FCRA.

33. The FCRA mandates that consumer reporting agencies provide consumers with access to the information sold about them to third parties, and also provide consumers with an

opportunity to review and dispute any inaccuracies in their credit files. *See* 15 U.S.C. §§ 1681g(a) and 1681i(a).

34. Specifically, each consumer reporting agency is required by the FCRA to provide consumers with copies of their consumer files without charge every twelve months, after a credit denial, and in other limited circumstances. *See* 15 U.S.C. § 1681g(a).

35. Companies that compile and sell public records to financial institutions for purposes of establishing an individual's eligibility for credit, including based upon USA PATRIOT ACT compliance concerns, must comply with FCRA section 1681g(a) by responding to consumer file requests. *Cortez*, 617 F.3d at 711-12 (government watch list data intended for USA PATRIOT ACT compliance must be disclosed to consumers upon request).

36. Although Defendants regularly report public record information, including criminal records, to consumers' current or prospective creditors, Defendants will not disclose these records to consumers who request their files as a matter of standardized policy and procedure.

37. Defendants' standardized refusal to respond to requests for information not only deprives consumers of statutorily mandated information that is essential to consumers' ability to ensure that the information being sold about them is complete and accurate, but also prevents them from making disputes pursuant to FCRA section 1681i.

E.   **The Experience of Plaintiff Jeffery N. Carr, Sr.**

38. Plaintiff Jeffery N. Carr, Sr. ("Carr") was issued a credit card account from Capital One Bank (USA), N.A.

39. On September 1, 2020, Capital One Bank (USA), N.A. ("Capital One") sent Carr a letter informing him that his account was being closed because "Capital One ha[d] discovered past or present legal action involving an individual or entity associated with the account. Unfortunately, it can't be reopened, and we are not able to offer additional information about this decision."

40. Carr had an outstanding balance at the time, and was not in default on the terms or payment.

41. The closing of his account negatively affected Carr's debt-to-credit ratios which are used in prevalent scoring models such as FICO.

42. Carr did not understand what "past or present legal action" Capital One could be referring to in its letter.

43. Plaintiff wondered whether such action supposedly involved himself, someone else, Capital One, or some other entity, and he wanted to know the source of the information that Capital One relied on in making its decision to close his account.

44. Capital One's mysterious and unilateral termination of Carr's existing credit also caused Carr worry and concern about his ability to obtain credit in the future. Without knowing what information Capital One relied upon, or the source of any such information, Carr was – and still is – unable to fix or correct such information. As a result, Carr fears that other accounts might be terminated or he will be denied other credit when he applies on the basis of such information.

45. Despite the letter's admonition that such efforts would be futile, Carr spent considerable time and effort calling Capital One seeking to reopen the account and discover the reasons for the account being closed, including the source of the information Capital One relied on to close his account.

46. When Carr called Capital One, he was told orally that Capital One had been informed that Plaintiff was a party to criminal proceedings for sex trafficking and possession of a firearm during the commission of a felony, or similar offenses.

47. Carr is not, and has never been subject to, such proceedings.

48. Carr informed Capital One that the information it had received was inaccurate, and requested that it reopen the account. Capital One responded that it believed such information to be true, would not reopen the account, and would not provide any additional information.

49. Capital One believed such information to be true because Defendants falsely reported and verified the information to Capital One.

50. Initially, Capital One refused to identify the Defendants as the source of the false allegations of criminal activity.

51. Generally, Capital One will disclose the identity of the consumer reporting agency whose report was used to make credit decisions. However, it does not disclose the identities of the Defendants.

52. Capital One's unique policy not to disclose the identity of the Defendants along with the type of criminal record data Defendants provide (*e.g.*, records dealing with terrorism and organized crime) indicates Defendants required their role in the consumer credit marketplace remain hidden to protect their ability to provide such information without repercussion from its refusal to follow procedures to assure maximum possible accuracy.

53. Carr only learned the identity of the Defendants as the responsible consumer reporting agency because he demanded its production, over objection, in separate litigation with Capital One regarding the closing of the account.

54. After learning that the Defendants were responsible for the inaccurate consumer report, Carr requested a copy of his file by certified mail to Defendant RDC's registered agent.

55. Defendants never responded to Carr's file request.

56. Without the ability to obtain his file, Carr is powerless to clear his good name through the FCRA's dispute process, and he remains subject to other accounts being closed or

being denied credit by other financial institutions who use consumer reports from the Defendants to make credit decisions.

57. Also through the separate litigation against Capital One, Carr learned that the criminal record Defendants included on the report sent to Capital One originated with a court in the Commonwealth of Virginia.

58. Carr was able to locate the relevant record, which is a criminal proceeding that pertains to his son, from the Circuit Court of the City of Virginia Beach. The relevant records clearly show the true criminal defendant's date of birth and full social security number, which are completely different from Plaintiff's. Defendants' failure to cross-reference these personal identifiers created a reckless indifference to ensuing accuracy, much maximum possible accuracy.

59. Defendants published the criminal record and consumer report about Carr in accordance with its standardized procedures.

60. Defendants' inaccurate and incomplete reporting of the criminal record information defamed Carr, and further, tortiuously interfered with his contractual relationship with Capital One. Plaintiff furthermore sustained other damages including harm to reputation and emotional distress.

## V. CLASS ACTION ALLEGATIONS

61. Plaintiff brings this action on behalf of the following Classes and Subclasses:

(a) **Accuracy Class**: All natural persons residing in the United States and its Territories about whom Defendants published to a third party criminal record information that did not pertain to the person who was the subject of the information, during the period beginning five (5) years prior to the filing of the Complaint and continuing through the date of the class certification order.

(b) **File Disclosure Class**: All natural persons residing in the United States and its Territories to whom, during the period beginning five (5) years prior to the filing of the Complaint and continuing through the date of the resolution of this

case, Defendants, in response to a request from a consumer, did not provide a copy of the file.

62. Plaintiff reserves the right to amend the definitions of the Classes and Subclasses based on discovery or legal developments.

63. **Numerosity. Fed. R. Civ. P. 23(a)(1).** The members of the Classes are so numerous that joinder of all is impractical. Upon information and belief, the number of consumers harmed by Defendants' practices are more numerous than what could be addressed by joinder, and those persons' names and addresses are identifiable through documents or other information maintained by Defendants.

64. **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the Classes, and predominate over the questions affecting only individuals. The common legal and factual questions include, among others: (1) whether Defendants follow reasonable procedures to assure the maximum possible accuracy of the information it includes on its consumer reports; (2) whether Defendants provided copies of consumer files upon request, and (3) whether Defendants acted willfully or negligently.

65. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of each Class Member. Plaintiff has the same claims for relief that he seeks for absent Class Members.

66. **Adequacy**. **Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representative of the Classes because his interests are aligned with, and are not antagonistic to, the interests of the members of the Classes he seeks to represent, he has retained counsel competent and experienced in such litigation, and he intends to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of members of the Classes.

67.     **Predominance and Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for the members of the Classes to individually redress effectively the wrongs done to them. Even if the members of the Classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Moreover, Defendants have taken measures to hide their identities as the consumer reporting agency responsible for the reports at issue, and it is unlikely that most class members are even aware of the Defendants' identity. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendants' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

### VI.   CAUSES OF ACTION

### COUNT I
### (CLASS CLAIM)
### 15 U.S.C. § 1681e(b)

68.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length here.

69.     Pursuant to sections 1681n and 1681o of the FCRA, Defendants are liable to Plaintiff and the Accuracy Class for negligently and willfully failing to follow reasonable

procedures to assure maximum possible accuracy of the consumer reports it sold in violation of 15 U.S.C. § 1681e(b).

## COUNT II
## (CLASS CLAIM)
## 15 U.S.C. § 1681g

70. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length here.

71. Defendants are liable for willfully and negligently violating 15 U.S.C. § 1681g(a) by failing to respond to requests from Plaintiff and the File Disclosure Class with a clear and accurate disclosure of the contents of their consumer files.

## COUNT III
## (CLASS CLAIM)
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP

72. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length here.

73. This claim is pleaded both in addition to the FCRA claim and in the alternative.

74. Plaintiff entered into a contractual relationship with Capital One Bank (USA), N.A. for use a credit card and its associated line of credit.

75. Defendants intentionally communicated to Capital One Bank (USA), N.A. information indicating that Plaintiff was involved in criminal proceedings relating to sex trafficking and other crimes. Defendant communicated similar inaccurate information about the Accuracy Class.

76. The information was false, and Defendants knew it was false.

77. In the alternative, Defendants should have known it was false as any reasonable effort would have discovered that Plaintiff was not involved in any such proceedings.

78. The purpose of Defendants communicating the false information to Capital One Bank (USA), N.A. was so that Capital One Bank (USA), N.A. would use that information to terminate and breach its contract with Plaintiff.

79. Defendants had no privilege or justification to induce Capital One Bank (USA), N.A. to terminate and breach its contract with Plaintiff and the Accuracy Class. Defendants would not have been harmed in any manner had Capital One Bank (USA), N.A. continued to provide credit to Plaintiff.

80. Plaintiff and the Accuracy Class were injured as a result of Defendants' conduct. Plaintiff lost available credit, his credit to debt ratios were negatively impacted, and his credit score was lowered. The termination of his contract also caused Plaintiff worry and concern about his ability to obtain credit in the future. Without knowing what information Capital One relied upon or the source of any such information, Plaintiff was – and still is – unable to fix or correct such information. As a result, Plaintiff fears that other accounts might be terminated or that he might be denied other credit when he applies on the basis of such information. Plaintiff furthermore sustained other damages including harm to reputation and emotional distress. The Accruacy Class suffered similar harm and injury.

## COUNT IV
## (INDIVIDUAL CLAIM)
## NEGLIGENCE

81. Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

82. Defendant owed Plaintiff a general duty not to put Plaintiff at risk of harm through its own actions.

83. Defendant's actions, detailed above, foreseeably created an unreasonable risk of harm to Plaintiff.

84. In particular, Defendant possessed the requisite information to correctly determine that the criminal record it found did not belong to Plaintiff, and had a duty to provide correct information on his consumer report.

85. Defendant breached its duty owed to Plaintiff.

86. As a result of Defendant's breach of its duty owed to Plaintiff, Plaintiff suffered significant harm.

87. Defendant's actions, detailed above, were willful, reckless, malicious, and indicative of a wanton disregard for Plaintiff's rights.

88. As a result, Defendant is liable to Plaintiff for the full amount of actual damages and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

On Count I:

1. An order certifying the case as a class action on behalf of the proposed Classes under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

2. An order entering judgment in favor of Plaintiff and the Classes and against Defendants for statutory and punitive damages pursuant to 15 U.S.C. § 1681n;

3. An order entering judgment in favor of Plaintiff and the Classes and against Defendants for actual damages pursuant to 15 U.S.C. § 1681o;

4. An order granting costs and reasonable attorneys' fees;

5. An award of pre-judgment and post-judgment interest as provided by law; and

6. Such other relief as the Court deems just and proper.

On Count II:

    1. An order certifying the case as a class action on behalf of the proposed Classes under Federal Rule of Civil Procedure 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

    2. An order entering judgment in favor of Plaintiff and the Classes and against Defendants for statutory and punitive damages pursuant to 15 U.S.C. § 1681n;

    3. An order entering judgment in favor of Plaintiff and the Classes and against Defendants for actual damages pursuant to 15 U.S.C. § 1681o;

    4. An order granting costs and reasonable attorneys' fees;

    5. An award of pre-judgment and post-judgment interest as provided by law; and

    6. Such other relief as the Court deems just and proper.

On Count III:

    1. An order entering judgment in favor of Plaintiff and against Defendants for actual and punitive damages;

    2. An order granting costs and reasonable attorneys' fees;

    3. An award of pre-judgment and post-judgment interest as provided by law; and

    4. Such other relief as the Court deems just and proper.

## **TRIAL BY JURY**

Plaintiff hereby requests a trial by jury on those causes of action where a trial by jury is allowed by law.

DATE: June 1, 2022      By:    */s/ James A. Francis*
    **FRANCIS MAILMAN SOUMILAS, P.C.**
JAMES A. FRANCIS
JOHN SOUMILAS
LAUREN KW BRENNAN
1600 Market Street, 25th Floor
Philadelphia, PA 19103
T: 215.735.8600
F: 215.940.8000
E: jfrancis@consumerlawfirm.com
E: jsoumilas@consumerlawfirm.com
E: lbrennan@consumerlawfirm.com

**SKAAR & FEAGLE, LLP**
Justin T. Holcombe
Georgia Bar No. 552100
jholcombe@skaarandfeagle.com
133 Mirramont Lake Drive
Woodstock, GA 30189
Tel:    (770) 427-5600
Fax:    (404) 601-1855

James M. Feagle
Georgia Bar No. 256916
jfeagle@skaarandfeagle.com
2374 Main Street, Suite B
Tucker, GA 30084
Tel:    (404) 373-1970

**BURKE LAW OFFICES, LLC**
Alexander H. Burke, *pro hac vice forthcoming*
909 Davis Street, Suite 500
Evanston, IL 60201
(312) 729-5288
ABurke@BurkeLawLLC.com

*Attorneys for Plaintiff*